UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TODD BONDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-02279-JPH-TAB |
| | ) |
| HOLLYWOOD CASINO AND HOTEL, | ) |
| BARSTOOL SPORTSBOOK, | ) |
| LORA Unidentified Bar Server, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Todd Bonds alleges that Laura Gatman,[1] a bartender at the Hollywood Casino and Hotel, discriminated against him on the basis of his race when she treated white patrons more favorably.  Mr. Bonds and Defendants have filed motions for summary judgment.  Dkt. [71]; dkt. [76].  For the reasons below, Defendants' motion is **GRANTED**, and Mr. Bonds's motion is **DENIED**.

**I.
Facts and Background**

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016).  For each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.*  That's not necessary here, however, because even when all

---

[1] The Complaint refers to Ms. Gatman as "Lora," *see* dkt. 1; the **Clerk is directed** to update the caption to reflect "Laura Gatman."

1

evidence is interpreted in Mr. Bonds's favor, Defendants are entitled to summary judgment.

### A. Mr. Bonds's November 27, 2022 Casino Visit

Mr. Bonds's allegations are based on his November 27, 2022, visit to the Barstool Sportsbook at the Hollywood Casino Hotel. *See* dkt. 1 at 2–3; dkt. 5 at 2. That visit is captured on video (there is no audio), which both parties have designated as evidence. *See* dkt. 74. That video shows Mr. Bonds walk over to and stand at the bar. Dkt. 74 at 00:14–1:15. For several minutes, Mr. Bonds stands at the bar while looking at his phone and occasionally glancing up, until he starts talking with Ms. Gatman, the bartender. *Id.* at 1:15–6:30. The conversation lasts about 20 seconds, until someone else walks up and asks Ms. Gatman for a drink. *Id.* at 6:50. Ms. Gatman serves the other patron and stands nearby while Mr. Bonds continues to look at his phone. *Id.* at 8:10–8:18. Another employee then comes and speaks with Ms. Gatman, who points in Mr. Bonds's direction. *Id.* at 9:00–9:22. For the next 7 minutes, Mr. Bonds continues to look at his phone, glancing up and turning away from the bar at times, while Ms. Gatman serves other patrons. *Id.* at 9:00–16:25. Finally, a third employee, Justin Dilts, taps Mr. Bonds and begins speaking with him. *Id.* at 16:26. Mr. Bonds then grabs his bag and walks away from the bar. *Id.* at 16:29.

Defendants have designated as evidence Mr. Bonds's deposition testimony that during these events Ms. Gatman was "rude," and asked him, "do you need anything?", to which Mr. Bonds responded, "no, not with that

attitude." Dkt. 72 at 8 (citing dkt. 71-1 at 78:19–22; 79:5–7 (Bonds Dep.)). Ms. Gatman then "went off" on him and "called the people," so he "just walked out as soon as they came down." *Id.* at 79:13–16 (Bonds Dep.). Mr. Bonds testified that when Mr. Dilts approached him, Mr. Bonds "let [Mr. Dilts] finish his sentence and then walked off." *Id.* at 81:23–25 (Bonds Dep.).

### B. Mr. Bonds's Designated Evidence

At summary judgment, Mr. Bonds "must support" his factual assertions with the evidence that he contends shows a dispute about material facts. Fed. R. Civ. P. 56(c)(1)(A) (requiring citations "to particular parts of [evidentiary] materials in the record"); S.D. Ind. L.R. 56-1 (requiring a "Statement of Material Facts" and citations to "admissible evidence" that "specify where the relevant information can be found in the supporting evidence"). Instead, Mr. Bonds makes factual assertions, unsupported by citation to evidence in the record, in his summary judgment filings. Dkt. 76; dkt. 77. He alleges, for example, that he "was pleasantly and quietly watching the result of a sporting event" when he was told "that he had to leave the premises for the day," but cites no evidence in support. Dkt. 76 at 3. He also alleges that Ms. Gatman "berated" him and that a security officer told him "that he was being barred from the property for 24 hours," again with no designated evidence in support. *Id.* at 8–9. And he alleges, with only a general reference to his deposition, that at a different time Casino security did nothing in response to a white man named John who was "often slamming things, banging tables and loudly cursing and yelling." *Id.* at 18–19.

Mr. Bonds therefore has not supported his allegations with designated evidence as Rule 56 and the Local Rules require. *See Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("We have repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

And Mr. Bonds' attempt to use his briefs as evidence does not succeed, because his filing that purports to be an "affidavit" is insufficient. In that filing, Mr. Bonds purports to "assert that all information presented in both the Motion for Summary Judgment and Reply to the Defense's Motion for Summary Judgment are true to the best of [his] knowledge." Dkt. 78. It does not, however, qualify as an evidentiary summary-judgment affidavit because it gives no indication that Mr. Bonds "[swore] to the content in the presence of someone authorized to administer oaths." *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011). It also is not an admissible declaration under 28 U.S.C. § 1746 because it is not sworn under penalty of perjury. *See id.*

Mr. Bonds's factual allegations are therefore unsupported and will not be considered in addressing the parties' cross-motions for summary judgment.

### C. Procedural History

Mr. Bonds brought this case against Hollywood Casino and Hotel, Barstool Sportsbook, Ms. Gatman, and two unnamed security employees, alleging racial discrimination. Dkt. 1 at 2–3, 7. The Court screened Mr.

Bonds's complaint and allowed a race discrimination claim to proceed under 42 U.S.C. § 1981 against Hollywood Casino and Hotel, Barstool Sportsbook, and Ms. Gatman.  Dkt. 5 at 4.  Mr. Bonds and Defendants have separately moved for summary judgment.  Dkt. 71; dkt. 76.

## II.
## Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

## III.
## Analysis

Under 42 U.S.C. § 1981, "All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981.  Section 1981 thus "provid[es] a broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing of contracts."  *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393 (7th Cir. 2007).  "Most commonly, litigants invoke § 1981 to assert their rights to be free from discrimination while making and enforcing employment contracts," but it can also be invoked "by plaintiffs who allege they

5

faced illegal discrimination in retail establishments." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006). "To establish a prima facie claim of such discrimination, [a plaintiff] must show that (1) he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Id.*[2]

Here, Defendants argue that they're entitled to summary judgment because Mr. Bonds cannot establish the third element—the making or enforcing of a contract—since Mr. Bonds left the Casino on his own accord. Dkt. 72 at 21. Mr. Bonds contends, without elaboration, that he "was clearly trying to enforce retail and employment contracts when he was removed." Dkt. 76 at 17–18.

To survive summary judgment on the third element, Mr. Bonds must designate evidence that he was "deprived . . . [of] the right to make and enforce a contract," such as a retail purchase. *Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996). The designated video evidence, however, shows Mr. Bonds at the Casino bar for sixteen minutes, so no reasonable jury could find that the Casino denied him admittance. *See id.* (affirming summary judgment when

---

[2] Defendants also argue that they're entitled to summary judgment on any § 1981 retaliation claim. Dkt. 72 at 29–33. Mr. Bonds's complaint, however, does not allege retaliation but only "racial discrimination." *See* dkt. 1 at 2. And the Court's screening order, which Mr. Bonds did not object to, identified a § 1981 "race discrimination claim" as "the only viable claim." Dkt. 5 at 4. Even if that weren't the case, Mr. Bonds would have "abandoned the claim" by not addressing it in his response in opposition to summary judgment. *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008); *see* dkt. 77. The Court therefore does not address § 1981 retaliation.

plaintiffs "were denied neither admittance nor service"). Indeed, Mr. Bonds admits that the Casino served him when he "got food" in another area of the Casino. Dkt. 71-1 at 86:1–34 (Bonds Dep.). Mr. Bonds also has not designated evidence that Ms. Gatman refused to take his order, but admits that she asked if he "needed anything." *Id.* at 79:6. While Mr. Bonds took issue with Ms. Gatman's "rude" tone, he did not treat her offer as a refusal of service, but responded, "no, not with that attitude." *Id.* at 78:19–22, 79:6–7. Mr. Bonds therefore "concede[s] that [the Casino] did not refuse [him] admittance or service." *Morris*, 89 F.3d at 414.

Nor has Mr. Bonds designated evidence that he was denied "the right to make and enforce a contract" by being "asked to leave" the Casino. *Id.*[3] Instead, Mr. Bonds testified that he "let [Mr. Dilts] finish his sentence and then walked off," dkt. 71-1 at 81:23–25 (Bonds Dep.), and the video evidence shows Mr. Bonds walking away on his own, dkt. 74, Ex. 47 at 16:29; *see* dkt. 71-14 ¶ 5. So, as in *Morris*, because Mr. Bonds "did not attempt to make any further purchases, [he] never sought to enter into a contractual relationship" with the Casino. 89 F.3d at 414.

The Seventh Circuit affirmed summary judgment for a defendant on a similar § 1981 claim in *Bagley v. Ameritech Corp.* 220 F.3d 518 (7th Cir.

---

[3] The Casino has designated evidence that it permanently banned Mr. Bonds on January 13, 2023 after investigating reports that Mr. Bonds had made "sexual-harassment based comments" toward employees. *See* dkt. 72 at 11. Because that ban occurred after Mr. Bonds filed his complaint, *see* dkt. 1, and because Mr. Bonds's summary-judgment filings focus solely on November 27, 2022, *see* dkt. 76; dkt. 77, the Court does not address those subsequent events.

7

2000). There, Mr. Bagley entered an Ameritech store to buy a phone. *Id.* at 519. When an employee asked the manager if the phone was in stock, the manager said that she "will not serve" Mr. Bagley, gave Mr. Bagley "the finger," handed the employee a brochure about the phone, and walked away. *Id.* at 520. Offended, Mr. Bagley "promptly left the store." *Id.* The district court granted summary judgment and the Seventh Circuit affirmed because the manager's "actions cannot be construed as anything more than a refusal to personally wait on Mr. Bagley." *Id.* at 521. It was Mr. Bagley who "cut off his exchange—and thus the opportunity to buy the phone—by leaving the store." *Id.*

Here, like in *Bagley*, Mr. Bonds "opted not to contract" with Defendants. *Id.* The Casino let him in and served him food, and Ms. Gatman offered to serve him at the Bar. Mr. Bonds then left the Bar on his own. Mr. Bonds therefore has not established a *prima facie* § 1981 claim. *See Bagley*, 220 F.3d at 521; *Morris*, 89 F.3d at 414.

Mr. Bonds nevertheless argues that he has "direct evidence" of racial discrimination because Defendants' prior counsel "withdrew from the case without explanation." Dkt. 76 at 5; *see* dkt. 77 at 3 ("[T]here is no bigger 'Direct Evidence' than the fact that these Defendants had an attorney withdraw without explanation."). Mr. Bonds alleges that the only potential reason for the withdrawal was "that the Hollywood Casino and Hotel and its employees were participating in behavior that was reasonably criminal or fraudulent" and that Defendants "were about to lie under oath." Dkt. 76 at 7. Mr. Bonds provides

8

no evidence for these speculative allegations, which are altogether unsupported. *See id.*

Mr. Bonds also argues that some of the questions he was asked at his deposition provide "direct evidence" of the Casino's "clandestine plot" to discriminate against him based on his race. Dkt. 76 at 10–14. He alleges that counsel asked him if he found "[white girls] attractive enough to engage in sexual activity," arguing that "[t]his particular questioning by Defense Counsel is the crux of the discrimination of 'Lora' and her co-defendants including the Hollywood Casino and Hotel." *Id.* at 12; dkt. 83 at 7 ("[T]he question clearly shows there was a sexual tension at play here, and banning Plaintiff [is] the type of stuff that has historically caused a lynch mob to kill folks."). The designated deposition excerpts, however, squarely contradict Mr. Bonds's characterization. Dkt. 71-1 at 109–16 (questioning of Mr. Bonds regarding a Casino employee's allegation of sexual harassment against Mr. Bonds); *see* dkt. 71-10. These arguments therefore do not affect Defendants' entitlement to summary judgment.

Finally, Mr. Bonds argues that Defendants' summary judgment motion should be denied because he was not allowed to amend his complaint. Dkt. 77 at 5. Mr. Bonds sought leave to amend his complaint on May 1, 2023, dkt. 24, which the Magistrate Judge denied because the motion was unclear and unsupported, dkt. 33. That order gave Mr. Bonds through June 5, 2023, to file a renewed motion, *id.*, but Mr. Bonds did not seek leave again until June 22,

2023, dkt. 41.  The Magistrate Judge denied that renewed motion as untimely under both the previous order and the Case Management Plan.  Dkt. 49.

Mr. Bonds argues that his renewed motion was late because he did not receive the Court's order setting the June 5, 2023 deadline to renew his motion.  Dkt. 77 at 6.  Even if that's true, however, his renewed motion was late under the Case Management Plan's June 1, 2023 deadline for "[a]ll motions for leave to amend the pleadings."  Dkt. 21 at 2; dkt. 49.  Moreover, Mr. Bonds did not object to the Magistrate Judge's order denying him leave to amend.  *See* Fed. R. Civ. P. 72(a) (allowing objections "within 14 days after being served with a copy").  And he "may not assign as error a defect in the order not timely objected to."  *Id.*  This argument therefore does not undermine summary judgment for Defendants.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**.[4]  Dkt. [71].  At the end of their summary-judgment motion and brief, Defendants request "an award of reasonable attorney fees and costs."  Dkt. 72 at 33.  If Defendants intend to seek fees and costs, they may file a motion seeking that relief within fourteen days after entry of judgment.  Fed. R. Civ. P. 54(d).

Because Defendants are entitled to summary judgment even when the designated evidence is viewed in Mr. Bonds's favor, Mr. Bonds's motion for

---

[4] Because Mr. Bonds has not designated evidence showing a triable issue of fact on his *prima facie* case that any Defendant refused to contract with him, the Court does not address Defendants' other arguments in support of summary judgment.

summary judgment is **DENIED**.  Dkt. [76].  Final judgment will enter by separate entry.

**SO ORDERED.**

Date: 8/29/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

TODD BONDS
P.O. Box 11442
Cincinnati, OH 45211

All electronically registered counsel